[No. 8,221.—In Bank.]
May 26, 1882.

## F. B. WHITING *v.* T. L. HAGGARD.

FEES OF CLERK OF BOARD OF SUPERVISORS OF PLUMAS COUNTY—STATUTES —CONSTITUTIONAL LAW.—The provisions of the Act of 1878, relating to fees of county officers in Plumas County (Stats. 1877-8, p. 547), which were to take effect on the first Monday of March, 1880, never went into effect.

APPLICATION for writ of mandamus.

The facts are stated in the dissenting opinion.

*John C. Hall* and *J. D. Goodwin,* for Plaintiff.

*R. H. F. Variel,* for Defendant.

The COURT:

On the authority of *Peachy* v. *Board of Supervisors of Calaveras County,* 8 P. C. L. J. 813, and the demurrer to the petition is overruled.

McKEE, J., dissenting:

I dissent. The case, as presented by the record, is this: On the seventh of January, 1882, the petitioner, being County Clerk of Plumas county, and *ex-officio* Clerk of the Board of Supervisors and Auditor of the county, issued to himself, under the provisions of an Act of the Legislature entitled "An Act to regulate fees of office and salaries of certain officers," etc., approved March 5, 1870, a warrant for his salary as Clerk of the Board of Supervisors for the month of December, 1881. Upon presenting the warrant to the Treasurer of the county for payment, payment was refused on the ground that the Act of 1870 had been repealed. That Act had been, in fact, repealed by an Act entitled "An Act in relation to certain officers in Plumas County, and to fix the compensation thereof," approved March 6, 1878, but the repealing Act was not to take effect until the first Monday in March, 1880. Meanwhile, the Constitution of 1879 was adopted by the people of the State, and went into effect at twelve o'clock

CAL. REPS. LX—33

M. of the first day of January, 1880, and the question arises, What effect did the adoption of the Constitution have upon these two legislative enactments?

By Subdivision 1, Section 5, Article xi, the Constitution made it the duty of the Legislature to provide, by general and uniform laws, for the election, in the several counties of the State, of such county officers as were required by law, including County Clerk and other officers, and prescribe their duties and fix their terms of office. Legislation to enforce this section of the Constitution was, therefore, necessary. At the time the warrant in controversy was drawn, such legislation had not been had. And according to Section 1, Article xxii, all laws repugnant to the provisions of the Constitution, which required to be enforced by legislation, were repealed on the first of July, 1880, if not sooner altered or repealed by the Legislature; while all laws in harmony with the provisions of the Constitution remained in "full force and effect," undisturbed by the adoption of the Constitution. The Act of 1870, being in force when the Constitution was adopted, was consistent or inconsistent with the provisions of the Constitution. If inconsistent, the Act expired by limitation on the first of July, 1880. If consistent, its existence and force were neither disturbed nor affected by the Constitution. It is manifest that the people in adopting the Constitution intended not to cause any inconvenience to, nor to disturb in any way, the order of things as it existed in the State, by the alterations and amendments of their organic law, except so far as it might be affected by the amendments themselves. This is clearly expressed by Section 1, Article xxii. of the Constitution: All the institutions of the State, all rights of person and property, and all existing laws, under and by which institutions existed and rights were protected, were left unchanged—just as though the Constitution had not been amended, except as to the effect which the amendments had upon them. Some of the former Courts were abolished; others with new names, were created and substituted for the former, in such a way as not to obstruct nor derange the judicial machinery of the State, nor to cause the slightest interference with judicial records, books, papers, and proceedings in courts. All writs, prosecutions, actions, and causes of action, all indictments or

informations which may have been found for any crime or offense which had been committed, were left pending, to be "proceeded upon as if no change had taken place, except as otherwise provided."

All recognizances, obligations, and other instruments, entered into and executed to the State, or to any municipal part of it; and all fines, taxes, penalties, and forfeitures due or owing to the State, or any subdivision or municipality thereof, were continued unimpaired and unaffected by the Constitution. All rights, actions, prosecutions, claims, and contracts of the State, counties, persons, or bodies corporate, · were continued, clothed with their original validity "as if the Constitution had not been adopted." And all laws in force consistent or inconsistent with its provisions were kept alive, until altered or repealed by the Legislature, except that inconsistent laws were repealed, to take effect on the first of July, 1880, if not sooner repealed by legislative enactment. (§§ 1, 2, 3, Sched.) So that, here and there, the Constitution of 1863 was altered and some of its sections amended. Some old Courts were abolished, and others, with new names, were substituted for them. But the State was still the same, still retained its republican form of government, and lived, moved, and had its being, under laws which had been passed by former Legislatures, and were in existence when the Constitution of 1879 was adopted. Now the Act of 1870 fell within the category of laws consistent with the provisions of the Constitution which required to be enforced by legislation; therefore, it continued to operate as law with the same force and effect that it had when the Constitution was adopted. Such as its force was then, and not otherwise, it was recognized and continued.

Now the force of law, at any time, is to be estimated by its nature and power as affected by any legislative enactment upon the subject-matter to which it may relate, and which may give it a determinate existence. In this way the Act of 1870 was affected by the Act of 1878, for the latter limited the existence of the former to the first Monday in March, 1880, at which time the last Act, as a repealing law, was to take effect. At the adoption of the Constitution both laws co-existed in harmony with the Constitution as it was at the

time of their passage; and, being constitutional co-existing laws dictated by the same policy, having in view the attainment of the same ends and relating to the same subject-matter, they should be considered and construed as one statute.

So considered, the two acts clearly expressed the legislative will on the subject of official salaries in Plumas County; but as the existence of the one was limited by the provisions of the other, the one died when the other took effect, and from that time the right to collect fees, etc., in the county was regulated, not by the dead law, but by the repealing law, which continued, from the time it took effect, as the law of Plumas County, until the Legislature by its action enforced the provisions of Subdivision 1, Section 5, Article xi., of the Constitution. Can it be doubted, if the Constitution under which the statutes were passed had not been amended at all, that the Act of 1870 would have ceased to exist on the first Monday in March, 1880, and that the Act of 1878 would have taken effect at that time ? Yet such was the situation; for the Constitution did not affect any former legislative enactments consistent with its provisions. The statute of 1878 was as consistent with the provisions of the Constitution as was the statute of 1870. Neither was expressly repealed, nor was either repealed by implication. Repeals by implication are not favored in the construction of the Constitution or statutes. Both, therefore, existed, with whatever force was imparted to them by their creator, just as though the Constitution under which they were· passed had not been amended. The life of the one, and the suspension of the other, ended on the day fixed by law. The Act of 1878 was therefore the law of the question involved in the case at the time when the warrant in controversy was drawn; and, as the warrant was drawn under the Act of 1870, which had ceased to exist, it was invalid and void. Therefore the demurrer should be sustained.